# United States Court of Appeals
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 22-7127**

**September Term, 2023**

FILED ON: OCTOBER 27, 2023

PETER TOREN,
        APPELLANT

v.

THE FEDERAL REPUBLIC OF GERMANY,
        APPELLEE

---

Appeal from the United States District Court
for the District of Columbia
(No. 1:16-cv-01885-RJL)

---

Before: SRINIVASAN, *Chief Judge*, and RAO and CHILDS, *Circuit Judges*.

## J U D G M E N T

This appeal was considered on the record from the United States District Court for the District of Columbia and on the briefs and oral argument of the parties. The panel has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). It is hereby

**ORDERED AND ADJUDGED** that the judgment of the district court be **AFFIRMED**.

David Friedmann, a Jewish industrialist, lived in Germany before World War II. He owned an extensive art collection. But after the Nazi Party seized power in Germany, the government allegedly stole his art collection. Decades later, in 2016, David Toren, the great-nephew of Friedmann, sued Germany in the United States District Court for the District of Columbia for the damages resulting from the Nazi regime's taking of Friedmann's art collection. David Toren passed away while his suit was pending in the district court, and his son Peter Toren became the plaintiff.

Toren asserted subject matter jurisdiction under the Foreign Sovereign Immunities Act (FSIA), 28 U.S.C. § 1602 *et seq.* Although the FSIA generally immunizes foreign sovereigns from suit in American courts, Toren alleged that his suit against Germany falls within the FSIA's expropriation exception. That exception confers jurisdiction over cases "in which rights in property taken in violation of international law are at issue." *Id.* § 1605(a)(3). The expropriation

exception, though, is subject to the domestic takings rule, under which a foreign sovereign's taking of its own nationals' property is not a violation of the international law of expropriation. *Fed. Republic of Germany v. Philipp*, 141 S. Ct. 703, 709 (2021). In other words, the expropriation exception does not confer jurisdiction over a foreign citizen's suit against her own country for taking her property: such a taking, in light of the domestic takings rule, is not "in violation of international law." 28 U.S.C. § 1605(a)(3).

Toren argued that the domestic takings rule is inapplicable here because the Nazis' treatment of Jews—and Friedmann, specifically—rendered Friedmann stateless. According to Toren, because Friedmann had become stateless before his property was taken, Germany took property from a stateless person rather than from one of its own citizens, such that the domestic takings rule does not apply. Germany disagreed. In Germany's view, even if Friedmann had been rendered stateless, an alleged taking from a stateless person does not violate the international law of property—or, by extension, implicate the FSIA's expropriation exception.

The district court dismissed Toren's suit for lack of subject matter jurisdiction. *Toren v. Fed. Republic of Germany*, No. 16-cv-01885-RJL, 2022 WL 3646307 (D.D.C. Aug. 24, 2022). The court held that Toren's "statelessness" theory of jurisdiction was foreclosed by the Supreme Court's decision in *Federal Republic of Germany v. Philipp*. *Id.* at *3–4 (citing 141 S. Ct. 703). In *Philipp*, the Supreme Court rejected the plaintiffs' attempt to rely on the international law of genocide to satisfy the expropriation exception's requirement that a taking be in violation of international law. 141 S. Ct. at 712–15. The Court held that the relevant body of international law was the international law of property, not of human rights. The district court in this case reasoned that, because Toren claimed Friedmann had been made stateless through a genocidal course of conduct, his claim was "for all relevant purposes identical to that made in *Philipp*, albeit with an added middle step." 2022 WL 3646307, at *3. The court thus concluded that the expropriation exception is inapplicable and that Germany is immune from suit. *Id.* at *5.

In this appeal, Toren contends that the district court erred by finding that Germany was immune from suit under the FSIA. While we disagree with the district court's view that Toren's statelessness theory of jurisdiction is incompatible with *Philipp*, we affirm the district court's dismissal based on our court's recent decision in *Simon v. Republic of Hungary*, 77 F.4th 1077 (D.C. Cir. 2023).

The plaintiffs in *Simon*, like Toren, advanced the theory that they were stateless at the time of the takings at issue and therefore fell outside the domestic takings rule. *Id.* at 1093–94. Our decision first determined that their theory did not conflict with *Philipp*. *Id.* at 1093–96. *Philipp* barred plaintiffs from "relying on the law of genocide to avoid the domestic takings rule," we explained, but it "did not opine on, let alone foreclose, the possibility that conduct that could give rise to a claim of genocide might also bear on the nationality inquiry for purposes of the expropriation exception or the domestic takings rule." *Id.* at 1096. We thus reject the district court's view that Toren's statelessness theory of jurisdiction is incompatible with *Philipp*. As we

concluded in *Simon*, even if the international law of human rights (including genocide) is not a relevant source of "international law" within the meaning of the expropriation exception, 28 U.S.C. § 1605(a)(3), the conduct underlying a potential claim of genocide could still inform the determination of a person's nationality for purposes of assessing whether the domestic takings rule applies.

Nevertheless, Toren's attempted invocation of the expropriation exception fails for "an independent reason" that we identified and applied in *Simon*. 77 F.4th at 1097. There, we rejected the plaintiffs' statelessness theory because they had failed to muster "adequate support for their contention that a state's taking of a *de facto* stateless person's property violates the international law of expropriation." *Id.* And if a foreign sovereign's taking of property from a stateless person does not violate the international law of expropriation, then the expropriation exception does not confer jurisdiction over the foreign sovereign. *Id.* at 1098.

Here, assuming without deciding that Friedmann was rendered stateless at the time of the alleged takings, *Simon* requires us to conclude that Toren has failed to identify adequate support for his contention that a state's taking of a stateless person's property amounts to a taking in violation of international law. Toren advances the same theory as the one on which the *Simon* plaintiffs unsuccessfully relied: international property law treats stateless persons the same as aliens, and because a state violates the international law of property when it deprives an alien of property, it also violates the international law of property when it deprives a stateless person of property.

In support of that theory, the *Simon* plaintiffs principally relied on the Restatement (Second) of Foreign Relations Law (Am. L. Inst. 1965) (Second Restatement), which, we explained, "bears authoritative weight in interpreting" the FSIA. *Simon*, 77 F.4th at 1097. We concluded that the Second Restatement demonstrates "the lack of any remedy under customary international law for a stateless alien" whose property is taken, and that the Second Restatement thus does not show that expropriating a stateless person's property violates international law. *Id.* at 1097–98. The plaintiffs also relied on certain secondary sources, but we found those sources unpersuasive because they "merely accord[ed] with the view that stateless persons are generally treated as aliens or non-nationals under state domestic laws." *Id.* at 1098. Even if that view is accurate, the plaintiffs "failed to persuade us that a state's taking of a *de facto* stateless person's property violates the customary international law of expropriation." *Id.* The same is true in this case.

In *Simon*, we left open "the possibility that . . . sources of international law not before us" in that case could provide support for the proposition that a state's taking of property from a stateless person "violates the customary international law of expropriation." *Id.* Toren, however, has not identified any such sources of international law. In support of his contention that "stateless persons have the same property rights as aliens under international law," Toren Br. 33, Toren relies on Article 13 of the United Nations Convention Relating to the Status of Stateless Persons (UN

Convention on Stateless Persons), which provides that "[t]he Contracting States shall accord to a stateless person treatment as favourable as possible and, in any event, not less favourable than that accorded to aliens generally" with regard to rights in "movable and immovable property," UN Convention on Stateless Persons, art. 13, Sept. 28, 1954, 360 U.N.T.S. 117. Toren also relies on Article 8 of the same Convention, which bars Contracting States from applying "exceptional measures which may be taken against the person, property or interests of nationals or former nationals of a foreign State . . . to a stateless person solely on account of his having previously possessed the nationality of the foreign State in question." Toren Reply Br. 15–16 (citing UN Convention on Stateless Persons, art. 8, Sept. 28, 1954, 360 U.N.T.S. 117).

That Convention does "not demonstrate[] that [Toren's] legal theory—that a state's taking of a *de facto* stateless person's property violates the international law of expropriation—has jelled into a binding rule of customary international law." *Simon*, 77 F.4th at 1098. Rather, the Convention only indicates, as does the "authoritative" Second Restatement, that a sovereign generally bears the same responsibility for property-related injuries to stateless persons as it does for such injuries to aliens. *See id.* at 1097 (discussing and quoting Second Restatement §§ 171, 185). Notwithstanding that general notion, we explained in *Simon*, the Second Restatement elsewhere "makes clear that stateless persons are 'without remedy' under international law for takings claims against an expropriating state." *Id.* (quoting Second Restatement § 175 cmt. d). As a result, we held, there was insufficient support for the idea "that a state's taking of a *de facto* stateless person's property violates the customary international law of expropriation," as would be necessary to implicate the FSIA's expropriation exception. *Id.* at 1098. The same conclusion necessarily follows here. In fact, the Second Restatement post-dates and accounts for the UN Convention on Stateless Persons, *see* Second Restatement § 175 n.2, fortifying the conclusion that the Convention presents no basis for departing from *Simon*'s holding predicated on the Second Restatement.

At oral argument, Toren suggested for the first time that a state's taking of a stateless person's property can violate international law, and thus fall within the FSIA's expropriation exception, even if relief is unavailable under the Second Restatement. Oral Arg. 13:45–14:55. The *Simon* plaintiffs advanced essentially the same point for the first time at oral argument in that case, and we declined to reach it because "arguments raised for the first time at oral argument are forfeited." *Simon*, 77 F.4th at 1098 (quoting *Physicians for Soc. Resp. v. Wheeler*, 956 F.3d 634, 647 (D.C. Cir. 2020)). Following *Simon*, we reach the same conclusion here about Toren's contention at oral argument.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published. The Clerk is directed to withhold issuance of the mandate until seven days after resolution of any timely petition for rehearing or rehearing en banc. *See* Fed. R. App. P. 41(b); D.C. Cir. R. 41.

**Per Curiam**

                             **FOR THE COURT:**
                             Mark J. Langer, Clerk

        BY:    /s/
                  Daniel J. Reidy
                  Deputy Clerk